## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| FREE SPEECH FOR PEOPLE<br>1320 Centre Street #405<br>Newton, MA 02459,<br><br>CAMPAIGN FOR ACCOUNTABILITY<br>611 Pennsylvania Ave SE #337<br>Washington, D.C. 20003,<br><br>    Plaintiffs,<br><br>  v.<br><br><br>FEDERAL ELECTION COMMISSION<br>1050 First Street NE<br>Washington, DC 20463,<br><br>    Defendant. | Civil Action No. 21-cv-3206 |

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

### INTRODUCTION

1. Plaintiffs Free Speech For People and Campaign for Accountability are nonpartisan, nonprofit watchdog groups. They bring this action against the Federal Election Commission ("FEC") for declaratory and injunctive relief under the Federal Election Campaign Act ("FECA"), 52 U.S.C. § 30109(a)(8)(A).

2. On December 16, 2016—more than 1,800 days ago—Plaintiffs filed before the FEC an administrative complaint against the Government of the Russian Federation ("Russian Federation") and Donald J. Trump for President, Inc. ("Trump Campaign"), alleging violations of FECA during the 2016 election.

3.     The main focus of FECA is the money: who paid, how much, to whom, and when. Under FECA, foreign entities are prohibited from spending *any* money to influence U.S. elections. And just as Al Capone was obligated to pay taxes on illegal income, even illegal political spending—recipients, dates, amounts, and purposes—must be publicly disclosed.

4.     Plaintiffs' administrative complaint, as amended, alleged that, for the purpose of influencing the 2016 presidential election, the Russian Federation had: paid hackers to hack into Democratic National Committee servers and leak the hacked information; paid people to make social media posts; and paid for political advertisements. The administrative complaint also alleged that the Russian Federation did not disclose any of this spending. Finally, the administrative complaint also alleged that at least some of the Russian Federation's political spending was "coordinated" with the Trump Campaign.

5.     In federal election law, the term "coordinated" has a specific meaning that is distinct from other terms, such as conspiracy. "Coordination" under FECA and its regulations does *not* require agreement or formal collaboration; coordination occurs when spending is made "in cooperation, consultation or concert with, or at the request or suggestion of" a candidate, his committee, or his agent, and even in some circumstances short of that. 52 U.S.C. § 30116(a)(7)(B)(i); 11 C.F.R. §§ 109.20-21. And when political spending by an outside entity is "coordinated" with a campaign, the campaign is *also* obligated to disclose the dates, amounts, and purposes of that spending. 11 C.F.R. §§ 109.20, 109.21(b)(1)-(2).

6.     Since the filing of the administrative complaint, some new information has emerged. But other investigations, pursuing different angles for different purposes and with different mandates, have not focused on bringing transparency to campaign financing—the FEC's mandate. Even today, despite multiple investigations, critical information about the money spent in the 2016 election is still unknown. How much did the Russian Federation spend? When and for which efforts did it make the payments? How much (and which) of that spending was "coordinated" with the Trump campaign?

7.     Upon receiving Plaintiffs' administrative complaint, the FEC was charged with answering these questions in determining whether there was a reason to believe that a violation of FECA had occurred.

8.     Under 52 U.S.C. § 30109(a)(8)(A), if the FEC fails to act on an administrative complaint within 120 days, the complainant may file an action in this Court challenging the FEC's delay as contrary to law.

9.     As of today, over 1,800 days have passed since Plaintiffs filed their administrative complaint.

10.     Plaintiffs ask the Court to declare that the FEC's failure to act on the administrative complaint is contrary to law, and order the FEC to conform with this declaration within 30 days under 52 U.S.C. § 30109(a)(8)(C).

## JURISDICTION AND VENUE

11.     This Court has both subject matter jurisdiction over this action and personal jurisdiction over the parties under 52 U.S.C. § 30109(a)(8)(A) and/or 5

U.S.C. § 702. This Court also has jurisdiction over this action under 28 U.S.C. §§ 1331, 2201(a), and/or 2202.

12.     Venue lies in this district under 52 U.S.C. § 30109(a)(8)(A), 28 U.S.C. § 1391(e), and/or 5 U.S.C. § 703.

## PARTIES

13.     Plaintiff Free Speech For People is a national non-partisan, non-profit 501(c)(3) organization that works to restore republican democracy to the people, including through legal advocacy concerning the law of campaign finance. Its supporters around the country engage in education and non-partisan advocacy to encourage and support effective government of, by, and for the people, including through efforts to identify and combat foreign influence in our elections.

14.     Plaintiff Campaign for Accountability is a national non-partisan, non-profit 501(c)(3) organization that uses research, litigation, and communications to expose misconduct and malfeasance in public life. It works to bring transparency to government and corporate actors and reform the campaign finance system to eliminate the corruption that flows from unlimited spending.

15.     Defendant Federal Election Commission is an independent federal agency charged with the administration and civil enforcement of FECA. 52 U.S.C. § 30106.

## STATUTORY AND REGULATORY BACKGROUND
### Campaign Spending and Disclosure Requirements

16.     Under FECA and FEC regulations, it is unlawful for "a foreign national, directly or indirectly, to make a contribution or donation of money or

other thing of value. . . in connection with a Federal . . . election," or make an

"expenditure" to influence a federal election. 52 U.S.C. §§ 302121(a)(1)(A), (C); 11

C.F.R. §§ 110.20(b), (f). An "expenditure" includes "any purchase, payment,

distribution, loan, advance, deposit, or gift of money or anything of value, made by

any person for the purpose of influencing any election for Federal office." 52 U.S.C.

§ 30101(9)(A).

17.     Any person that is not a political committee that makes independent

expenditures exceeding $250 for a particular election in a calendar year "shall file a

verified statement or report on FEC Form 5 in accordance with 11 CFR 104.4(e)

containing the information required by [11 C.F.R. § 109.10(e)]." 11 C.F.R.

§ 109.10(b). If the aggregated expenditures exceed $10,000 per election for a

particular election up to and including the 20th day before an election, the person

making the independent expenditures "must report the independent expenditures

on FEC Form 5, or by signed statement if the person is not otherwise required to

file electronically under 11 CFR 104.18." 11 C.F.R. § 109.10(c).

18.     Under FECA and FEC regulations, expenditures that are

"coordinated" between an outside party and a campaign or candidate are generally

deemed to be both in-kind contributions to, and expenditures by, the campaign. 52

U.S.C. § 30116(a)(7)(B)(i); 11 C.F.R. §§ 109.20(b), 109.21(b)(1).

19.     A third-party expenditure is deemed to be "coordinated"—and

therefore an in-kind contribution—if it is "made by any person in cooperation,

consultation, or concert, with, or at the request or suggestion of, a candidate, his

authorized political committees, or their agents." 52 U.S.C. § 30116(a)(7)(B)(i); 11 C.F.R. § 109.20(a) ("*Coordinated* means made in cooperation, consultation or concert with, or at the request or suggestion of, a candidate, a candidate's authorized committee, or a political party committee.").

20.    In Section 214 of the Bipartisan Campaign Reform Act of 2002, Congress instructed the FEC to promulgate detailed regulations regarding coordinated communications, but specifically provided that "[t]he regulations shall *not require agreement or formal collaboration* to establish coordination." 116 Stat. 81, 95 (emphasis added).

21.    Under FEC regulations promulgated under this directive, a "coordinated communication" is a third-party expenditure that meets at least one "content standard" and one "conduct" standard. *See* 11 C.F.R. §§ 109.21(a)(1)-(3). "Agreement or formal collaboration . . . is not required for a communication to be a coordinated communication." *Id.* § 109.21(e).

22.    A payment for a communication made for the purpose of influencing a federal election that meets the definition of "coordinated communication" under 11 C.F.R. § 109.21, or is an "expenditure" that is "made in cooperation, consultation or concert with, or at the request or suggestion of, a candidate, a candidate's authorized committee" or an agent thereof, but does not meet the definition of "coordinated communication," must be reported as an expenditure by the candidate whom it was intended to benefit, and is deemed, expect in specific circumstances, as an in-kind contribution to that candidate. 11 C.F.R. §§ 109.20, 109.21(b)(1)-(2).

23.     Any political committee, including a candidate committee, that receives a contribution (including the value of an in-kind contribution) exceeding $200 must report that receipt. 11 C.F.R. §§ 104.3, 104.8. Similarly, political committees, including candidate committees, must report expenditures (including expenditures by others that are deemed to be made by the campaign because they are coordinated) exceeding $200. 11 C.F.R. §§ 104.3, 104.9.

24.     No person may knowingly solicit, accept, or receive a contribution from a foreign national. 52 U.S.C. § 30121(a)(2); 11 C.F.R. § 110.20(g).

### Administrative and Judicial Process

25.     Any person who believes there has been a violation of FECA may file a sworn complaint with the FEC. 52 U.S.C. § 30109(a)(1). Based on the complaint, the response from the person or entity alleged to have violated the Act, facts developed by its Office of General Counsel ("OGC"), and any OGC recommendation, the FEC decides whether there is "reason to believe" a violation of FECA has occurred. 52 U.S.C. § 30109(a)(2). A "reason to believe" exists where a complaint "credibly alleges" a violation of FECA "may have occurred." FEC, *Statement of Policy Regarding Commission Action in Matters at the Initial Stage in the Enforcement Process*, 72 Fed. Reg. 12,545 (Mar. 16, 2007).

26.     Under FECA, "any party aggrieved . . . by a failure of the Commission to act on such complaint during the 120-day period beginning on the date the complaint is filed, may file a petition" in this Court, and "the court may declare that . . . the failure to act is contrary to law, and may direct the Commission to conform with such declaration within 30 days, failing which the complainant may

bring, in the name of such complainant, a civil action to remedy the violation involved in the original complaint.." 52 U.S.C. §§ 30109(a)(8)(A), (C).

## FACTUAL BACKGROUND

27.     On December 16, 2016, Plaintiffs filed a sworn administrative complaint with the FEC against the Government of the Russian Federation ("Russian Federation") and Donald J. Trump for President, Inc. ("Trump Campaign"), alleging and requesting an investigation into violations of multiple provisions of FECA during the 2016 election.

28.     Plaintiffs filed two amendments to the complaint, on May 3, 2017 and June 2, 2017, to provide new information.[1]

29.     The administrative complaint, as amended, recited detailed allegations regarding Russian political spending prohibited under FECA, and coordination between the Trump Campaign and the Russian Federation.

30.     Some of the allegations in the administrative complaint have been examined in separate investigations by other entities. However, critical questions raised by the administrative complaint have not been answered by other investigations, and remain unanswered. Due to the FEC's failure to act upon the complaint, Plaintiffs lack basic information regarding political spending in the

---

[1] The May 3, 2017 amendment completely revised and restated the original complaint; the June 2, 2017 amendment provided supplemental factual information and additional counts. For brevity, this complaint uses the term "the administrative complaint" to refer to the December 16, 2016 administrative complaint as amended by the May 3, 2017 and June 2, 2017 amendments.

2016 election that is and was required to be (but has not been) disclosed under FECA, and which, to this day, is unknown to Plaintiffs or the American public.

**The Russian Influence Campaign's Conduct Prohibited by FECA**

31.    As set forth in detail in the administrative complaint, the Russian Federation's efforts to influence the U.S. election involved conduct prohibited by FECA including, *inter alia*, expenditures of funds on activities intended to help candidate Donald Trump in his presidential campaign against Hillary Clinton.

32.    In 2016, key members of the Democratic National Committee and Clinton's campaign were victimized by a "phishing" attack. The attack involved communications transmitted directly to the targets in the United States. The information obtained through the phishing attack permitted hackers to gain access to thousands of internal Democratic Party and campaign emails stored on U.S. servers, including those of Clinton's campaign chairman. Hackers then transmitted the stolen e-mails to WikiLeaks, a web site that released this information beginning in the summer of 2016, just before the Democratic National Convention. The release of these email messages is widely agreed to have had the purpose of harming Clinton's electoral chances and of benefitting her competitor Trump.

33.    As the U.S. government concluded, the phishing attacks, subsequent hacking of e-mails, and distribution of stolen e-mails to WikiLeaks were performed by individuals employed or paid by the Russian Federation.

34.    With the apparent purpose of influencing the 2016 election, the Russian Federation sponsored cyber intrusions directly into over 20 U.S. state and local election systems, and successfully penetrated at least four.

35.    In addition, the Russian Federation paid individuals to communicate political messages via social media (such as Facebook) and other means to persons in the United States, for the purpose of influencing the election.

36.    A Russian Federation-paid team at a St. Petersburg, Russia-based entity called the Internet Research Agency posted substantial amounts of pro-Trump, anti-Clinton material on third-party web sites and communications media, such as Twitter. Some of these Russian Federation-paid actors used false or deceptive profiles suggesting that they were American citizens.

37.    Finally, the Russian Federation paid for political advertisements on web sites, such as Facebook, regarding the 2016 election.

38.    Many of these posts use words that in context could have had no other reasonable meaning than to urge the election of Donald Trump or the defeat of Hillary Clinton, and/or could only be interpreted by a reasonable person as containing advocacy of the election of Donald Trump or defeat of Hillary Clinton.

39.    The Russian Federation and the Trump Campaign concealed their wrongdoing through deception separate from the FECA violations themselves. Notably, through at least 2019, agents of the Trump Campaign (including Trump himself) issued false or misleading public statements, and obstructed official investigations into this wrongdoing.

### Coordination Between the Trump Campaign and the Russian Federation

40.    As set forth in detail in the administrative complaint, the Russian Federation evinced a clear preference for Trump, and its agents held numerous

personal connections to the Trump Campaign. By December 2016, the existing record of public communications between the Trump Campaign and Russian Federation actors provided a *prima facie* case warranting a complete FEC investigation into whether the Russian Federation coordinated its expenditures with the Trump Campaign in a manner violating FECA.

41.     On June 27, 2016, in reference to Clinton's email messages, Donald Trump stated at a news conference: "Russia, if you're listening, I hope you're able to find the 30,000 emails that are missing. I think you will probably be rewarded mightily by our press."

42.     As set forth in detail in the administrative complaint, close associates of the Trump Campaign appeared to have advance knowledge of WikiLeaks publication of stolen e-mails.

43.     As set forth in detail in the administrative complaint, multiple high-level members of (and surrogates for) the Trump Campaign had direct and unusual communications with senior Russian Federation officials.

## ADMINISTRATIVE PROCEEDINGS

44.     Plaintiffs filed the administrative complaint with the FEC on December 16, 2016.

45.     On or about December 22, 2016, the FEC sent each Plaintiff a letter acknowledging receipt of the administrative complaint, designating it Matter Under Review ("MUR") No. 7207.

46.    On May 3, 2017 and on June 2, 2017, Plaintiffs filed amendments to the complaint providing additional information.

47.    As amended, the administrative complaint alleged six separate counts of violations of FECA:

a.   Count I: The Russian Federation, a "foreign national" under 52 U.S.C. § 30121(b)(1), paid money to computer hackers to gain access to Democratic National Committee emails and to transmit those emails to WikiLeaks for the purpose of public distribution, for the purpose of influencing the outcome of the 2016 presidential election, in violation of 52 U.S.C. § 30121(a)(1)(C) and 11 C.F.R. § 110.20(f).

b.   Count II: The Russian Federation paid money to individuals operating on social media to post material on others' web sites to promote Trump's candidacy and/or oppose Clinton's candidacy, in violation of 52 U.S.C. § 30121(a)(1)(C) and 11 C.F.R. § 110.20(f).

c.   Count III: The Russian Federation failed to file any FEC disclosure reports regarding its independent expenditures, in violation of 11 C.F.R. §§ 109.10(b) and (c).

d.   Count IV: The Russian Federation and the Trump Campaign made "coordinated communications" with the Trump Campaign in violation of 52 U.S.C. § 30121(a)(1)(A) and 11 C.F.R. §§ 110.20(b) and 109.22 on the part of the Russian Federation, and 52 U.S.C. § 30121(a)(2) and 11 C.F.R. § 110.120(g) on the part of the Trump

Campaign; further, the Trump Campaign failed to report such communications as in-kind contributions, in violation of 11 C.F.R. §§ 104.3(a)-(b) and 109.21(b)(3).

e. Count V: The Russian Federation paid money to buy advertisements on Facebook for the purpose of influencing the election, in violation of 52 U.S.C § 30121(a)(1)(C) and 11 C.F.R. § 110.20(f).

f. Count VI: The Russian Federation failed to file disclosure reports for monies spent on political advertisements on Facebook that may constitute independent expenditures, in violation of 11 C.F.R. §§ 109.10(b) and (c).

48. The May 2017 amendment to the administrative complaint also specifically urged that "in light of the potential national security implications of this case and FECA's requirement (52 U.S.C. § 30106(f)(3)) that '[i]n carrying out its responsibilities under this Act, the Commission shall, to the fullest extent practicable, avail itself of the assistance, including personnel and facilities of other agencies and departments of the United States,' the FEC should avail itself of the assistance of such other agencies and departments of the United States as necessary to conduct a full investigation."

49. The administrative complaint is currently pending before the FEC.

**Injury to Plaintiffs**

50.    Due to the Russian Federation's and Trump Campaign's failure to disclose spending, and the FEC's inaction on the administrative complaint, Plaintiffs have been deprived of information regarding campaign financing.

51.    Plaintiffs' work on campaign finance-related issues—including public education, litigation, administrative advocacy and enforcement, and legislative reform efforts—depends on accurate and complete campaign finance reporting as required by statute. This work is obstructed where, as here, campaign finance information subject to mandatory disclosure under FECA is not available. Plaintiffs have a cognizable interest in the underlying information that an entity making independent expenditures has not accurately or fully disclosed to the FEC. Without this information, Plaintiffs' campaign finance advocacy, public education work, and legislative reform efforts are inhibited. The withholding of information to which Plaintiffs are legally entitled also forces Plaintiffs to divert resources from other projects furthering their mission towards efforts to obtain the information.

52.    Moreover, Plaintiffs also have a right to receive information upon the FEC's adjudication of their administrative complaint, including responses received by the FEC from the respondents, legal and factual analysis by FEC staff, and other investigatory materials and records. See 52 U.S.C. § 30109(a)(4)(B)(ii); 11 C.F.R. §§ 11 C.F.R. § 5.4(a)(4), 111.20(a); 81 Fed. Reg. 50,702. This information informs Plaintiffs' campaign finance programs, including their public education efforts, regulatory and enforcement practice, and reform efforts. By unlawfully

delaying resolution of Plaintiffs' administrative complaint, the FEC has denied them access to this information to which they are entitled.

53.   Plaintiffs are also involved in monitoring major social media and other technology companies (including Facebook) and their practices as they affect our democracy and elections. Information concerning foreign, coordinated, or other unlawful payments made to technology companies to influence the 2016 election, as alleged in the administrative complaint, would inform Plaintiffs' efforts to educate their members and the public regarding these companies' business practices, and to propose and advocate for legal reforms to such practices.

54.   The information that Plaintiffs lack includes information that the Russian Federation and/or the Trump Campaign were obliged to report to the FEC, and the FEC was obliged to make public, including but not limited to:

    a.   With respect to the Russian Federation's independent expenditures aggregating over $250 with respect to a given election in a calendar year, and in accordance with 11 C.F.R. § 109.10:

        i.   The reporting person's name, mailing address, occupation, and the name of his or her employer, if any;

        ii.   The identification (name and mailing address) of the person to whom the expenditure was made;

        iii.   The amount, date, and purpose of each expenditure;

        iv.   A statement that indicates whether such expenditure was in support of, or in opposition to a candidate, together with the

candidate's name and office sought; if the expenditure meets the criteria set forth in 11 C.F.R. § 104.3(b)(3)(vii)(C), the states in which the communication was distributed;

v.  Whether such expenditure was made in cooperation, consultation, or concert with, or at the request or suggestion of a candidate, a candidate's authorized committee, or their agents, or a political party committee or its agents; and

vi.  The identification of each person who made a contribution in excess of $200 to the person filing such report, which contribution was made for the purpose of furthering the reported independent expenditure.

vii.  The date of public distribution or dissemination, in accordance with Schedule 5-E of FEC Form 5.

b.  With respect to those "expenditures" by the Russian Federation (whether or not they constituted "*independent* expenditures") that were coordinated with the Trump Campaign under 11 C.F.R. § 109.20(b), or that constituted payments for coordinated communications under 11 C.F.R. § 109.21, each person to whom an expenditure was made in an aggregate amount or value in excess of $200, together with the date, amount and purpose of each expenditure, in accordance with 11 C.F.R. § 104.3.

55.  To this day, Plaintiffs do not have this information.

56.     Plaintiffs' need for this information is ongoing, despite the passage of time. If Plaintiffs had access to this information, they would use it in some or all the following ways:

   a.   Publicizing the disclosed information to the general public via Plaintiffs' web sites and on social media.

   b.   Analyzing trends and patterns in the spending, and publicizing their analyses through research reports and in major news media.

   c.   Using the information and analyses to (1) determine whether to propose further federal or state legislation or oversight, and (2) brief legislators accordingly.

   d.   Analyzing the recipients of the payments to determine how to engage with them.

   e.   Other uses that can only be determined after reviewing the information.

57.     The Russian Federation and the Trump Campaign are still, as of today, obligated to disclose this information to the FEC, which in turn is required to make it public.

58.     Due to both the Russian Federation and the Trump Campaign's underlying violations, and the FEC's failure to enforce the reporting, disclosure, and transparency requirements of FECA, Plaintiffs have not had access to information regarding campaign financing.

59.    Plaintiffs have not had the opportunity to disseminate this information to their members or supporters, and have not had the opportunity to act on the information. Plaintiffs lacked this information during the 2018 and 2020 election cycles, when it could have been useful in informing their work on campaign finance-related issues, and continue to lack it as the 2022 election approaches.

60.    Both the Russian Federation and the Trump Campaign have been active in federal elections since the filing of the administrative complaint. In both 2018 and 2020, the Russian Federation attempted to influence U.S. federal elections. In 2020, Trump mounted an unsuccessful run for re-election.

61.    Because Plaintiffs lacked (and continue to lack) the information that was required to be disclosed in the 2016 election as alleged in the administrative complaint, they did not have the opportunity to disseminate this information to their members or supporters, or to otherwise act upon it, during the past nearly five years during which the information could have been useful in informing their work on campaign finance-related issues.

62.    The continued federal political activity of both the Russian Federation and the Trump Campaign, and the significant risk of future harm, highlights Plaintiffs' ongoing need for the information that they failed to disclose previously.

### CAUSE OF ACTION

### Count I—FECA (Failure to Act on Complaint)

63.    Plaintiffs reallege and incorporate by reference all preceding paragraphs as if fully set forth herein.

64.    The FEC has failed to act on Plaintiffs' administrative complaint.

65.    The FEC's failure is contrary to law under 52 U.S.C. § 30109(a)(8)(A).

## REQUESTED RELIEF

WHEREFORE, Plaintiffs respectfully request that the Court:

a)  Declare that the FEC's failure to act on Plaintiffs' administrative complaint was contrary to law under 52 U.S.C. § 30109(a)(8)(A);

b)  Order the FEC to conform with this declaration within 30 days, under 52 U.S.C. §§ 30109(a)(8)(A)-(C), failing which Plaintiffs may bring, in their own names, a civil action to remedy the violation involved in the original complaint, under § 30109(a)(8)(C);

c)  Award legal fees and costs of suit incurred by Plaintiffs; and

d)  Grant such other and further relief as this Court deems just and proper.

Respectfully submitted,

/s/ Ronald A. Fein

December 8, 2021

Ronald A. Fein (D.D.C. Bar No. MA0012)
Courtney Hostetler*
John C. Bonifaz*
Ben Clements*
Free Speech For People
1320 Centre St. #405
Newton, MA 02459
(617) 244-0234
rfein@freespeechforpeople.org

*Counsel for plaintiffs*

*Motion for *pro hac vice* admission forthcoming

19